Terry Gross, terry@grossbelsky.com (SBN 103878)
Adam C. Belsky, adam@grossbelsky.com (SBN 147800)
GROSS & BELSKY P.C.
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel: (415) 544-0200
Fax: (415) 544-0201

*ATTORNEYS FOR PLAINTIFF AND PROPOSED CLASS*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CESAR ALONSO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO. LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., NHK SPRING PRECISION (GUANGZHOU) CO., LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ("Plaintiff") Cesar Alonso, on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      This class action is on behalf of all persons and entities in the United States who during

the period from January 2005 through at least May 2016 (the "Class Period"), indirectly purchased a hard disk drive ("HDD"), for their own use and not for resale, which included as a component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirators of Defendants.

2.      Hard disk drives are incorporated into electronic devices, such as desktop computers, laptops, gaming consoles, MP3 players, printers, and copy machines, or sold as standalone storage devices. An HDD uses a magnetic recording head to read from, and write onto, a spinning disk contained in the hard drive.

3.      Suspension assemblies hold the recording heads close to the disks and provide the connection from the recording heads to the hard disk drives' circuitry. According to Assistant Attorney General of the United States Department of Justice ("DOJ") Antitrust Division Makan Delrahim, HDD suspension assemblies or Finished Products are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial." About 4.5 billion HDDs were manufactured globally during the Class Period.  All devices with an HDD contain a suspension assembly.

4.      Sometime during 2016, the DOJ opened an investigation into the HDD Suspension Assemblies market. On July 26, 2016, Defendant Hutchinson Technology, Inc. received a letter from the DOJ requesting documents relating to the investigation. Three years later, on July 29, 2019, the DOJ announced that the NHK Defendants agreed to plead guilty and pay a $28.5 million criminal fine, subject to court approval, as a result of their participation in a conspiracy to suppress and eliminate competition by fixing prices of HDD suspension assemblies sold in the United States and elsewhere.

5.      Just this past week, on February 14, 2020, the DOJ announced that a federal grand jury had returned an indictment against two individuals for their roles in a global conspiracy to fix prices for suspension assemblies used in hard disk drives. According to the DOJ press release, these individuals, both Japanese citizens, were former top sales executives at NHK Spring Co. Ltd. The indictment alleges that, from at least as early as May 2008 and

continuing until at least April 2016, they participated in a conspiracy with their competitors to stabilize, maintain, and fix the prices of suspension assemblies used in hard disk drives. The press release states that the conspirators accomplished their scheme by, among other things, agreeing to refrain from competing on prices and allocating their respective market shares. The release adds that the conspirators also exchanged pricing information including anticipated pricing quotes, which they used to inform their negotiations with U.S. and foreign customers that purchased suspension assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere.

6.      In July 2016, the Japanese Fair Trade Commission ("JFTC") formally searched the offices of both the NHK and TDK Defendants (or certain of their subsidiaries) on suspicion that the companies fixed prices for HDD suspension components. On February 9, 2018, the JFTC issued a cease and desist order to both the NHK and TDK Defendants and found that they substantially restrained competition in the HDD suspension assemblies' market by agreeing to maintain sales prices.

7.      In January 2018, South Korea's antitrust regulator, the Korean Fair Trade Commission ("KFTC") announced it was investigating suspected collusion by manufacturers of HDD suspension assemblies.

8.      In April 2018, Brazilian antitrust authorities also started an investigation regarding allegations that Defendant TDK Corporation and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies.  The allegations included accusations that they had shared data and allocated customers to maintain artificially high prices on HDD suspension assemblies.

9.      This class action alleges that the Defendants and their co-conspirators participated in a conspiracy to suppress and eliminate competition for HDD suspension assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD suspension assemblies sold in the United States and elsewhere. The conspiracy was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws,

and the common law of unjust enrichment.

10.     As a direct and proximate result of this anticompetitive and unlawful conduct, Plaintiff and the Class (as defined below) paid more during the Class Period for the products containing HDD suspension assemblies than they otherwise would have paid in a competitive market, and have thereby suffered antitrust injury to their business or property.

11.     Plaintiff, Cesar Alonso, seeks to represent all persons and entities who, during the period from and including January 2005 through at least May 2016 (the "Class Period"), indirectly purchased Hard Disk Drive or a Finished Product, not for reseal, which included as a component part one or more Hard Disk Drive suspension assemblies that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

## JURISDICTION AND VENUE

12.     Plaintiff brings this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Accordingly, Plaintiff seeks equitable and injunctive relief as well as asserts claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws. Plaintiff also seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiff and the Class also seek attorneys' fees, costs, and other expenses under federal and state law.

13.     This Court has personal jurisdiction over each of the Defendants because each of the Defendants transacts substantial business in this judicial district.

14.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries, inter alia: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Hard Disk Drive suspension assemblies throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial,

reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because, inter alia, each of the Defendants regularly conduct substantial business in this district and are therefore subject to personal jurisdiction, and because a substantial part of the events giving rise to the Complaint arose in this district.  Plaintiff also resides in this District.

## THE PARTIES

16.     Plaintiff Cesar Alonso is a resident of San Francisco, California.  During the Class Period, he purchased at least one HDD suspension assembly indirectly from at least one Defendant, and was injured in his business or property as a result of Defendants' unlawful conduct alleged herein.

17.     Defendant NHK Spring Co. Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan.  NHK Spring Co. Ltd., directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

18.     Defendant NHK International Corporation is a U.S. subsidiary of NHK Spring Co. Ltd. with its principal place of business located in Novi, Michigan.  NHK International Corporation, directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

19.     Defendant NHK Spring (Thailand) Co., Ltd. is a Thailand-based subsidiary of NHK Spring Co. Ltd.   NHK Spring (Thailand) Co., Ltd., directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced

and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

20.     Defendant NHK Spring Precision (Guangzhou) Co., Ltd. is a Chinese corporation with its principal place of business in Guangzhou, China.  It is an affiliate of and wholly controlled by NHK Spring Co. Ltd.  NHK Spring Precision (Guangzhou) Co., Ltd., directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in  and purchased throughout the United States, including in this District, during the Class Period.

21.     Defendant NAT Peripheral (Dong Guan) Co., Ltd. is a Chinese corporation with its principal place of business in Guangdong, China.  It is an affiliate of and wholly controlled by NHK Spring Co.  Ltd.  Defendant NAT Peripheral (Dong Guan) Co., Ltd.,  directly and/or through its subsidiaries, which it wholly owned and/or controlled,  manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

22.     Defendant NAT Peripheral (H.K.) Co., Ltd.  is a Chinese corporation with its principal place of business in Hong Kong, China. It is an affiliate of and wholly controlled by NHK Spring Co. Ltd.  Defendant NAT Peripheral (H.K.) Co., Ltd., directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

23.     Defendant TDK Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  TDK Corporation, directly and/or through its affiliates, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

24.     Defendant Magnecomp Precision Technology Public Co. Ltd. is a Thai corporation with its principal place of business in Ayutthaya, Thailand. It is an affiliate of and

wholly controlled by TDK Corporation.  Defendant Magnecomp Precision Technology Public Co. Ltd., directly and/or through its affiliates, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

25.     Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with its principal place of business in Hong Kong, China.  Defendant SAE Magnetics (H.K.) Ltd., directly and/or through its affiliates, which it wholly owned and/or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

26.     Defendant Hutchinson Technology Inc. is a Minnesota corporation with its principal place of business in Hutchinson, Minnesota.  TDK Corporation acquired Hutchinson Technology Inc. on October 6, 2016.  It is an affiliate of and wholly controlled by TDK Corporation.  Hutchinson Technology Inc, directly and/or through its affiliates, which it wholly owned or controlled, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

27.     Defendant Headway Technologies, Inc. is a Delaware corporation with its principal place of business in Milpitas, California.  It is an affiliate of and wholly controlled by TDK Corporation. Defendant Headway Technologies, Inc., directly and/or through its affiliates, manufactured, marketed, sold, serviced and/or supplied HDD suspension assemblies that were directed to, sold in and purchased throughout the United States, including in this District, during the Class Period.

## AGENTS AND CO-CONSPIRATORS

28.     Various other individuals, partnerships, corporations, and other business entities, unknown to the Plaintiff, have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiff reserves the right to name

some or all of these persons as defendants at a later date.

29.   The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' affairs.

30.   Whenever in this complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

31.   Each Defendant or co-conspirator acted as the principal, agent, or joint venture of, or for, other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged by Plaintiff.  Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for Hard Disk Drive suspension assemblies made by its parent company.

## CLASS ACTION ALLEGATIONS

32.   Plaintiff brings this action both on behalf of himself and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) (b)(2) and (b)(3), on behalf of the following class:

> All individuals and entities who, during the period January 1, 2005 through at least May 31, 2016, indirectly purchased Hard Disk Drive suspension assemblies, not for resale, in the United States manufactured by one or more of the Defendants, their subsidiaries, or their affiliates and contained in products that use HDDs. Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

33.   Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants. Plaintiff believes that, due to the tremendous nature of the trade and commerce involved, there are likely many thousands of Class members, geographically dispersed throughout the United States such that joinder of all Class members is impracticable.

34.   Plaintiff's claim is typical of the claims of the Class in that Plaintiff is an

indirect purchaser of products containing Hard Disk Drive suspension assemblies, all Class members were damaged by the same wrongful conduct of Defendants and their coconspirators as alleged herein, and the relief sought is common to the Class.

35.     Numerous questions of law or fact arise from Defendants' anticompetitive conduct that is common to the Class. Among the questions of law or fact common to the Class are: (a) Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain, or stabilize the prices for Hard Disk Drive suspension assemblies sold in the United States; (b) Whether Defendants engaged in a contract, combination, or conspiracy to restrict output of Hard Disk Drive suspension assemblies sold in the United States; (c) Whether Defendants restricted output of Hard Disk Drive suspension assemblies sold in the United States and committed other conduct in furtherance of the alleged conspiracy; (d) Whether the conduct of Defendants caused prices of Hard Disk Drive suspension assemblies sold in the United States to be artificially inflated to non-competitive levels; and (e) Whether Plaintiff and other members of the Class were injured by the conduct of Defendants and, if so, the appropriate class-wide measure of damages and appropriate injunctive relief.

36.     These questions of law or fact are common to the Class, and predominate over any other questions affecting only individual Class members.

37.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is an indirect purchaser of Hard Disk Drive suspension assemblies from one of the Defendants and has no conflicts with any other member of the Class. Furthermore, Plaintiff has retained competent counsel experienced in antitrust and class action litigation.

38.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

39.     Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

40.     Injunctive relief is appropriate as to the Class as a whole because Defendants

have acted or refused to act on grounds generally applicable to the Class as a whole.

41.     Plaintiff reserves the right to expand, modify, or alter the class definition in response to information learned during discovery.

## TRADE AND COMMERCE

42.     During the Class Period, Defendants, or one or more of their subsidiaries, sold and shipped, and caused to be shipped, substantial quantities of Hard Disk Drive suspension assemblies in and into the United States in a continuous and uninterrupted flow of interstate and international commerce.

43.     The business activities of Defendants that are the subject of this complaint were within the flow of, and substantially affected, interstate trade and commerce in the United States and intentionally caused antitrust injury in the United States.

## ADDITIONAL FACTS

44.     HDDs store digital content and information. HDDs are either stand-alone external storage devices or fully integrated into another product, such as a desktop or laptop computer. HDDs are used to store documents, pictures, music, videos, programs or applications, operating systems, as well as other digital content.

45.     HDDs have spinning magnetic disks and magnetic heads that fly over the disks, reading and writing the information contained on the disks. The HDD suspension assemblies hold the magnetic heads in position over the disks.

46.     Manufacturers and suppliers of HDD suspension assemblies most often sell them directly to companies that manufacture HDDs. These manufacturers sell HDDs containing the HDD suspension assemblies to manufacturers of products that include HDDs or to consumers directly.  In 2018, for example, global unit shipments of HDDs totaled nearly 400 million.

47.     The demand for HDD suspension assemblies is contingent on the demand for HDDs. In the 1980s, there were more than twenty producers of HDD suspension assemblies. The market consolidated beginning in the 1990s, and by 2005 the market had already become significantly more concentrated, with fewer than five major producers left in the market. This

trend has been further aggravated by the vertical integration of companies like TDK Corporation that was formerly depended on independent component suppliers in their manufacturing of HDDs.

48.     Currently, there are only two major suppliers of HDD suspension assemblies: TDK Corporation and NHK Spring Co. Ltd. TDK Corporation acquired a formerly independent HDD suspension assemblies' manufacturer in 2007.  Hutchinson Technology Inc., at one time the largest manufacturer of HDD suspension assemblies, was acquired by TDK Corporation in 2016. Prior to this acquisition, Hutchinson Technology Inc. had also consolidated and was a principal supplier of HDD suspension assemblies to Western Digital Corporation (headquartered in San Jose, CA); Seagate Technology, LLC (Cupertino, CA); and SAE Magnetics, Ltd/TDK Corporation (Tokyo, Japan).

49.     There are substantial barriers that prevent entry into the HDD suspension assemblies' market. Any prospective new participant in this business would face costly start-up costs, including manufacturing plants and equipment, energy, transportation, distribution infrastructure, and skilled labor. Manufacturing HDD suspension assemblies requires the ability to produce precision assemblies in large quantities.  Increased demand for other types of data storage technology, such as those that make use of flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which involves hard disk drives.

50.     Demand for HDD suspension assemblies is highly inelastic as there are no close substitutes for the products. Customers must purchase HDD suspension assemblies as an essential part of an HDD (or product containing an HDD) regardless of whether the prices are kept at an anti-competitive level or not.

## PLAINTIFF'S CLAIMS ARE TIMELY

### Fraudulent Concealment Tolled the Statute of Limitations

51.     Plaintiff repeats and re-alleges the allegations set forth above.

52.     Application of the doctrine of fraudulent concealment tolls the statute of limitations on the claims asserted by the Plaintiff and the Class.  Plaintiff and members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the

existence of the conspiracy alleged herein until July 26, 2016, the date that the JFTC's investigation of the NHK and TDK Defendants became public.

53.   Before that time, Plaintiff and members of the Class were unaware of Defendants' unlawful conduct, and could not have known that they were paying supra competitive prices for HDD suspension assemblies throughout the United States during the Class Period.

54.   Because the alleged conspiracy was concealed by the Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 26, 2016.

55.   For these reasons, the statute of limitations applicable to Plaintiff's and the Class' claims was tolled and did not begin to run until July 26, 2016.

## VIOLATIONS ALLEGED

56.   Plaintiff incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this complaint.

57.   Beginning at least as early as May 1, 2009, the Defendants, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and applicable state law. Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market price of Hard Disk Drive suspension assemblies as herein alleged.

58.   The contract, combination, or conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the market for Hard Disk Drive suspension assemblies that they intentionally placed into commerce or sold in the United States.

59.   For the purpose of formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators did those things they contracted, combined or

conspired to do, including: a. Participating in meetings and conversations to discuss the prices of and/or supply for Hard Disk Drive suspension assemblies;  b. Agreeing to manipulate prices and supply so as to boost Hard Disk Drive suspension assemblies' sales in a manner that deprived indirect purchasers of free and open competition;  c. Coordinating the restriction of Hard Disk Drive suspension assemblies capacity in the market; and d. Selling Hard Disk Drive suspension assemblies to customers at non-competitive prices.

60.    As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, Plaintiff and other members of the Class have been injured in their business and property in that they have paid more for the products containing Hard Disk Drive suspension assemblies than they would have paid in the absence of Defendants' price-fixing.

## **EFFECTS**

61.    The above combination and conspiracy has had the following effects, among others: a. Price competition in the sale of Hard Disk Drive suspension assemblies by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States; b. Prices for Hard Disk Drive suspension assemblies sold by Defendants have been raised, fixed, maintained, and stabilized at artificially high and noncompetitive levels through the United States; and c. Indirect purchasers of Hard Disk Drive suspension assemblies from Defendants have been deprived of the benefit of free and open competition in the purchase of Hard Disk Drive suspension assemblies and, specifically, the products containing them.

62.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and other members of the Class have been injured in their business and property in that they paid more for products containing Hard Disk Drive suspension assemblies than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

//

//

//

## CLAIMS FOR RELIEF

## COUNT I

### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

63.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

64.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

65.    The acts done by the Defendants as part of, and in furtherance of, their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in their professional capacity.

66.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

67.    The anticompetitive acts were intentionally directed at the United States market for HDD suspension assemblies and the products containing them and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD suspension assemblies and products containing HDD suspension assemblies throughout the United States.

68.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD suspension assemblies.

69.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Class who purchased HDD suspension assemblies have been harmed by being forced to pay inflated, supra-competitive prices for products containing HDD suspension assemblies.

70.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and

conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

71.     Plaintiff and members of the Class have been injured and will continue to be injured in their business and property by paying more for products containing HDD suspension assemblies purchased indirectly from Defendants and their coconspirators than they would have paid and will pay in the absence of the conspiracy.

72.     The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

73.     Plaintiff and members of the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT II

### Violation of State Antitrust Statutes (on behalf of Plaintiff and the Class)

74.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

75.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD suspension assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

76.     The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for HDD suspension assemblies and to allocate customers for these products in the United States. In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)  participating in meetings and conversations among themselves during which they agreed to price HDD suspension assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by manufacturers of products containing HDD suspension assemblies and others including indirect purchasers like Plaintiff and members of the Class with respect to HDD suspension assemblies and products containing

HDD suspension assemblies sold in the United States;

(b)   allocating customers and markets for HDD suspension assemblies in furtherance of their agreements; and

(c)   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

77.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD suspension assemblies.

78.     Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

79.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et. seq.*

80.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et. seq.*

81.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et. seq.*

82.     The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et. seq.*

83.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et. seq.*

84.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et. seq.*

85.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et. seq.*

86.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et. seq.*

87.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et. seq.*

88.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et. seq.*

89.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et. seq.*

90.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et. seq.*

91.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et. seq.*

92.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et. seq.*

93.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et. seq.*

94.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et. seq.*

95.     Defendants have entered into unlawful agreements in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et. seq.*

96.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et. seq.*

97.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et. seq.*

98.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et. seq.*

99.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et. seq.*

100.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et. seq.*

101.     Plaintiff and members of the Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract,

conspiracy and agreement.  Plaintiff and members of the Class have paid more for products containing HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct.

102.    In addition, Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Class.

103.    Accordingly, Plaintiff and the members of the Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## COUNT III

### (Violation of State Consumer Protection Statutes

### (on behalf of Plaintiff and the Class)

104.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

105.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

106.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et. seq.*

107.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et. seq.*

108.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et. seq.*

109.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et. seq.*

110.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et.*

*seq.*

111.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

112.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

113.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et. seq.*

114.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et. seq.*

115.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et. seq.*

116.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et. seq.*

117.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et. seq.*

118.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et. seq

119.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et. seq.*

## COUNT IV

### Unjust Enrichment (on behalf of Plaintiff and the Class)

120.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

121.    Plaintiff brings this claim under the laws of all states listed in Count II and Count III, *supra.*

122.    As a result of their unlawful conduct, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

123.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff of the members of the Class for HDD suspension assemblies. Plaintiff and the members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

124.    Plaintiff and the members of the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Class may make claims on a pro rata basis.

## DAMAGES

125.    During the Class Period, Plaintiff and other members of the Class indirectly purchased Hard Disk Drive suspension assemblies from the Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations alleged herein, paid more for products containing Hard Disk Drive suspension assemblies than they would have paid in the absence of such antitrust violations. As a result, Plaintiff and the other members of the Class have sustained damages to their business and property in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

126.    That the Court determine that this action may be maintained as a class action under Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as class representative, and Plaintiff's counsel be appointed as counsel for the Class;

127.    That the unlawful contract, combination or conspiracy alleged be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

128.    That Plaintiff and the Class recover damages, as provided by law, determined to have been sustained as to each of them, in an amount to be trebled in accordance with the

antitrust laws, and that judgment be entered against Defendants on behalf of Plaintiff and the Class;

129.    That Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law;

130.    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

131.    That Plaintiff and the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action; and

132.    For such other and further relief as is just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this complaint that are so triable.

Dated:  April 13, 2020                    GROSS & BELSKY P.C.


                                         By: _/s/ *Terry Gross*_____.
                                              TERRY GROSS

                                         Terry Gross (SBN 103878)
                                         Adam C. Belsky (SBN 147800)
                                         GROSS & BELSKY P.C.
                                         201 Spear Street, Suite 1100
                                         San Francisco, CA 94105
                                         Telephone: (415) 544-0200
                                         Facsimile: (415) 544-0201